IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-23-D

| | |
|---|---|
| MILITARY & FEDERAL CONSTRUCTION COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ACE ELECTRIC, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **ORDER** <br> ) <br> ) <br> ) <br> ) <br> ) |

On December 20, 2013, Military & Federal Construction Company, Inc. ("MFCC" or "plaintiff") filed a complaint in Onslow County Superior Court asking for a declaratory judgment that numerous waivers that Ace Electric, Inc. ("Ace" or "defendant") signed now bar Ace's demands for additional compensation stemming from a government contract. MFCC Compl. [D.E. 1-1] 4, 11–13. On January 29, 2014, Ace timely removed the action to this court. See [D.E. 1] 2. On February 4, 2014, Ace answered the complaint and asserted three counterclaims [D.E. 10]. On February 28, 2014, Ace amended its counterclaims, adding a Miller Act claim against MFCC and Fidelity and Deposit Company of Maryland ("FDCM"), the surety for MFCC's Miller Act bond [D.E. 15]. On March 13, 2014, Ace filed a corrected counterclaim [D.E. 16]. On April 6, 2015, Ace moved for partial summary judgment on MFCC's claim for declaratory judgment [D.E. 32]. On April 6, 2015, MFCC and FDCM jointly moved for partial summary judgment on MFCC's claim and Ace's counterclaims for delay damages and quantum meruit [D.E. 33]. Thereafter, the parties responded and replied. See [D.E. 35, 36, 37, 38]. As explained below, the court grants in part and denies in part MFCC's and FDCM's motion and denies Ace's motion.

I.

In 2011, MFCC entered into a contract with the United States Air Force ("Air Force") for the construction and improvements to a youth center at Moody Air Force Base in Valdosta, Georgia. [D.E. 33-1] 3. On October 13, 2011, MFCC entered into a subcontract with Ace, wherein Ace agreed to furnish and install several electrical systems for the construction project. Id. The subcontract required Ace to submit to MFCC payment applications and "Partial Waivers and Releases of Liens" before MFCC issued interim payments to Ace. Id. 3, 11–12 (subcontract paragraphs 5.2, 5.8.1). Ace submitted the following payment applications and "partial waivers of claims":

| Period Start | Period End | Waiver Through | Source |
| --- | --- | --- | --- |
|  | 12/25/2011 | 12/25/2011 | [D.E. 33-1] 23–24 |
| 12/25/2011 | 02/25/2012 | 02/25/2012 | [D.E. 33-1] 26–27 |
| 02/25/2012 | 03/25/2012 | 03/25/2012 | [D.E. 33-1] 29–30 |
| 03/25/2012 | 04/25/2012 | 04/17/2012 | [D.E. 33-1] 32–33 |
| 04/25/2012 | 05/25/2012 | 05/16/2012 | [D.E. 33-1] 35–36 |
| 05/25/2012 | 06/25/2012 | 06/19/2012 | [D.E. 33-1] 38–39 |
| 06/25/2012 | 07/25/2012 | 07/19/2012 | [D.E. 33-1] 41–42 |
| 07/25/2012 | 08/25/2012 | 08/17/2012 | [D.E. 33-1] 44–45 |
| 08/25/2012 | 09/25/2012 | 09/19/2012 | [D.E. 33-1] 47–48 |
| 09/25/2012 | 10/25/2012 | 10/15/2012 | [D.E. 33-1] 50–51 |
| 10/25/2012 | 11/25/2012 | 11/19/2012 | [D.E. 33-1] 53–54 |
| 11/25/2012 | 12/25/2012 | 12/18/2012 | [D.E. 33-1] 56–57 |
| 12/25/2012 | 01/25/2013 | 01/17/2013 | [D.E. 33-1] 59–60 |
| 01/25/2013 | 02/28/2013 | 02/15/2013 | [D.E. 33-1] 62–63 |
| 03/01/2013 | 03/31/2013 | 02/15/2013 | [D.E. 33-1] 65–66 |

| 04/01/2013 | 04/30/2013 | 04/16/2013 | [D.E. 33-1] 68–69 |
| 05/01/2013 | 05/31/2013 | 05/2013    | [D.E. 33-1] 71–72 |

In the partial waivers of claims, Ace agreed to "waive and release any and all rights, demands, and claims, including delay and impact claims, (including any right to a materialman's or mechanic's lien or any Miller Act claim) against [MFCC], its surety, the project owner, the owner's property, and any construction lender." Id. 24.

On October 17, 2011, the Air Force modified the project. Due to the modification, the Air Force gave MFCC a 21-day extension. [D.E. 36-1] 6 (GOVT 12). On November 9, 2011, MFCC held a preconstruction meeting with subcontractors. Id. 2. On January 23, 2012, Ace sent MFCC a letter noting the existence of delays on the project and asking for an approved project schedule. Id. 9–10 (MFCC 226–27). On April 16, 2012, MFCC provided its first project schedule. Id. 2. On April 30, 2012, Ace sent MFCC another letter in which Ace detailed its concerns with "the delays and numerous outstanding issues" on the project. [D.E. 36-1] 12 (MFCC 219). Ace alleged that it had incurred extra costs of more than $85,000 because of delays and asked MFCC to explain "how Ace will be compensated for this loss of labor." Id.

On May 1, 2012, the Air Force sent MFCC a "letter of concern" in which it noted the government's concern with, among other issues, the "[i]nability of effective project management to include superintendent and quality control," "[s]tructural concerns," and the "[s]chedule/[p]rogress" of the project. Id. 14 (MFCC 942–43). On May 14, 2012, MFCC responded to the Air Force's concerns. Id. 16–20 (MFCC 10787–91).

On July 27, 2012, the Air Force granted MFCC an extension for the period of performance, this time by 128 days, "due to government delays." Id. 21, 54 (GOVT 24, MFCC 3068).

On December 13, 2012, the Air Force sent MFCC an unofficial CCASS performance report.

3

Id. at 33 (MFCC 971). The report noted generally "satisfactory" ratings, but the report gave "marginal" ratings for "[a]dherence to approved schedule" and "resolution of delays," among other factors. Id. at 34 (MFCC 972). The reviewing officer wrote that the "[p]roject remains behind schedule. . . . Problem appears to be in select subcontractors." Id.

On December 14, 2012, the Air Force wrote a memo concerning the project in which it discussed several issues with the project and noted that the project was "12% behind schedule as of 6 December 2012." Id. 27–28 (MFCC 964–65). Despite its concerns, the government decided "not to issue a Stop Work Order." Id. 28 (MFCC 965). On December 20, 2012, MFCC responded to the CCASS report. Id. 29–32 (MFCC 967–70).

On January 27, 2013, MFCC held its first project coordination meeting. Id. 2.

On February 1, 2013, Ace submitted cost information to MFCC and claimed $155,785.45 in additional costs from delayed work. Id. 38–39 (ACE 2888–89). On February 11, 2013, MFCC received its third and final extension of 101 days to complete the project. Id. 49 (GOVT 32). On February 27, 2013, Ace met with MFCC personnel to "discuss recovery of Ace's delay and impact costs." Id. 2. On March 27, 2013, Ace sent information on its labor and other costs it incurred on the project, starting October 13, 2012, the day after the project was originally scheduled to be complete. Id. 55 (MFCC 7251).

On June 15, 2013, the project at Moody Air Force base was substantially complete. [D.E. 33-1] 5, 74. Ace received from MFCC payments totaling approximately $918,121. Id. 5. This sum covers the total amount that Ace requested through May 20, 2013, for the period from the beginning of the project through May 31, 2013. Id. 71.[1]

---

[1] No record evidence suggests that Ace performed any work before the December 25, 2011 payment application waiver. Rather, that application is labeled as request number "one," and the waiver notes that no money had been paid. [D.E. 33-1] 23–24.

4

On September 20, 2013, Ace informed MFCC that it had incurred damages of approximately $154,008 and demanded payment from MFCC. Id. 77–78. On November 4, 2013, MFCC responded and argued that Ace waived any right to damages by signing and submitting the partial waivers of claims with its payment applications. Id. 80–81. On November 21, 2013, Ace responded and asserted that the waivers of claims were invalid because they exceeded the scope of the subcontract or, alternatively, were subject to equitable estoppel and other defenses. Id. 85–89. On December 20, 2013, MFCC filed suit [D.E. 1-1] 4.

## II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of genuine dispute of material facts or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable

5

inferences in that party's favor. Matsushita, 475 U.S. at 587. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

The parties agree, and the record supports, that North Carolina law governs the dispute (other than Ace's federal claim under the Miller Act). See, e.g., [D.E. 33-1] 16 (stating that the "Agreement will be governed by, construed, and enforced in accordance with the laws of the States of North Carolina"); [D.E. 34] 8–10; [D.E. 37] 1–2. In construing North Carolina law, the court must attempt to predict what the Supreme Court of North Carolina would do if it "were faced with this [case]." Teague v. Bakker, 35 F.3d 978, 991 (4th Cir. 1994). If the Supreme Court of North Carolina has not addressed the issue, this court may consider cases from the North Carolina Court of Appeals, treatises, and the practices of other states. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).

A.

Ace's first counterclaim alleges a breach of contract by MFCC. Specifically, Ace asserts that Ace incurred delay damages of at least $206,577.92, caused by MFCC's alleged breach of the subcontract. See Ace Am. Countercl. [D.E. 16] ¶¶ 17–20, 22–23.[2] To prove breach of contract under North Carolina law, a plaintiff must prove (1) the existence of a valid contract, and (2) breach of the terms of the contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), disc. rev. denied, 360 N.C. 290, 627 S.E.2d 621 (2006); Poor v. Hill, 138 N.C. App. 19, 26,

---

[2] Ace also asserts that it is entitled to $102,013.53 of retainage. Ace Am. Countercl. [D.E. 16] ¶ 21. MFCC has not moved for summary judgment concerning the retainage claim. See [D.E. 33] 1; [D.E. 34] 7 n.4.

6

530 S.E.2d 838, 843 (2000); Jackson v. Carolina Hardwood Co., 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995).

In interpreting a contract, the court must "ascertain the intention of the parties at the time the contract was executed." Computer Sales Int'l, Inc. v. Forsyth Mem'l Hosp., Inc., 112 N.C. App. 633, 634, 436 S.E.2d 263, 264 (1993); see State v. Philip Morris USA Inc., 363 N.C. 623, 631, 685 S.E.2d 85, 90 (2009). "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008); see Metcalf v. Black Dog Realty, LLC, 200 N.C. App. 619, 633, 684 S.E.2d 709, 719 (2009); Glover v. First Union Nat'l Bank of N.C., 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). If the court finds the contract ambiguous, however, "interpretation of the contract is for the jury." Schenkel, 362 N.C. at 273, 658 S.E.2d at 921; see Handex of Carolinas, Inc. v. Cnty. of Haywood, 168 N.C. App. 1, 16, 607 S.E.2d 25, 34 (2005); Computer Sales Int'l, 112 N.C. App. at 634, 436 S.E.2d at 264. A contract is ambiguous when "either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Schenkel, 362 N.C. at 273, 658 S.E.2d at 921; see Glover, 109 N.C. App. at 456, 428 S.E.2d at 209 ("An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties.").

The parties agree on subcontract's validity. Their dispute regarding delay damages generally focuses on the validity of the seventeen waivers of claims that Ace signed and submitted with its payment applications and whether these waivers bar Ace from bringing a breach of contract claim for delay damages under the subcontract. In these waivers, Ace agreed to "[w]aive and release any and all . . . claims, including delay and impact claims, (including any right to a materialman's or mechanic's lien or any Miller Act claim) against [MFCC and] its surety [FDCM]." See, e.g., [D.E.

7

33-1] 72. MFCC argues that these waivers bar Ace from raising any claim for delay damages. See [D.E. 34] 8–14. Ace responds that the waivers of claims are invalid because they are broader than the release required in the subcontract and therefore lack consideration. See, e.g., [D.E. 32] 7–18; [D.E. 36] 11–17.

Contractual releases must be supported by consideration. See, e.g., Lenoir Mem'l Hosp., Inc. v. Stancil, 263 N.C. 630, 633–34, 139 S.E.2d 901, 903 (1965); All In One Maint. Serv. v. Beech Mountain Constr. Co., 70 N.C. App. 49, 55, 318 S.E.2d 856, 860 (1984). A "payment of an amount indisputably due" is not consideration. See All In One, 70 N.C. App. at 55, 318 S.E.2d at 860. A waiver that is required in the original subcontract, however, is supported by the consideration that supports the subcontract. Mainline Supply Co. v. Hillcrest Constr., Inc., 721 S.E.2d 765, 2012 WL 380106, at *3 (N.C. Ct. App. Feb. 7, 2012) (unpublished table decision).

MFCC argues that consideration is provided by the subcontract because the subcontract required Ace to provide (among other things) "Partial Waivers and Releases of Liens." See [D.E. 36-2] 2. In support, MFCC cites paragraph 5.8.1 of the subcontract, which states that "[a]s a condition of payment, the Subcontractor shall furnish the Contractor with Partial Waivers and Releases of Liens from the Subcontractor and its subcontractors, as may be requested by, and in a form acceptable to, the Contractor." [D.E. 33-1] 12. MFCC then argues that, as a mater of law, this provision entitled MFCC to draft a waiver covering both liens and claims. In support, MFCC cites two cases and two treatises in support of this assertion. [D.E. 34] 11–12.

The court rejects MFCC's argument. The court may interpret the contract as a matter of law only if the contractual language is facially plain and unambiguous. See Schenkel, 362 N.C. at 273, 658 S.E.2d at 921. The cited cases and secondary sources establish, at best, that paragraph 5.8.1 might include claims within the scope of the required lien waiver. Although MFCC dismisses Ace's

8

contention that paragraph 5.8.1 requires only lien waivers and not claim waivers as a "hyper-technical interpretation," [D.E. 34] 12, the court cannot ignore that the plain language of the provision says "partial waivers and releases of liens," not liens and claims. Cf. Lien waiver, Black's Law Dictionary (9th ed. 2009) ("A written and signed waiver of a subcontractor's mechanic's lien right . . . .").

MFCC's alternative arguments in support of consideration for the partial waivers of claims likewise fail. First, paragraph 5.12 notes that Ace would release MFCC from all claims for anything that occurred during a period of time upon acceptance of payment for that period, but it is unclear from the contract that a partial waiver of claims submitted in conjunction with a payment application is the same as acceptance of an approved payment. Second, the court rejects MFCC's reliance on Lynn v. Lynn, 202 N.C. App. 423, 689 S.E.2d 198 (2010). In Lynn, the court was reviewing the findings of fact from a case that went to trial and not reviewing a grant of summary judgment. See Lynn, 202 N.C. App. at 428–30, 689 S.E.2d at 203–04; cf. Schenkel, 362 N.C. at 273, 658 S.E.2d at 921 ("When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury."). Third, although the subcontract permitted MFCC to request the lien waivers in a "form acceptable" to MFCC, the court rejects MFCC's argument that this language unambiguously gave MFCC "significant discretion over the scope of the Waivers," see [D.E. 34] 14, to the degree that MFCC could potentially require waivers of additional categories of rights, including (for example) the right to sue under the Miller Act. See, e.g., [D.E. 33-1] 72. Finally, MFCC contends that the court must interpret lien waiver claims because Ace had no lien rights to waive on this federal project. [D.E. 34] 14. MFCC's argument, however, ignores the effect of North Carolina law, which permits a subcontractor in Ace's position to "have a lien upon funds that are owed to the contractor." N.C. Gen. Stat. § 44A-18(a) (emphasis added). Accordingly, the

9

court declines to award MFCC summary judgment based on the partial waivers.

Next, the court considers whether paragraph 5.12 of the subcontract warrants granting MFCC summary judgment on Ace's breach-of-contract counterclaim for delay damages. Pursuant to paragraph 5.12, Ace agreed that "the acceptance of any payment shall constitute a release of the Contractor from all claims or liability, other than retainage, for any work, services, materials or equipment performed or furnished or for anything which occurred or which failed to occur during the payment period to which the payment relates." [D.E. 33-1] 12. In its final payment application and waiver, Ace acknowledged that it received $807,971.76 for the work through April 30, 2013, and requested $110,150.02 for the work done in May 2013. Id. 71–72; cf. id. 68. Ace then received payment of $110,150.02. Id. 5. No record evidence suggests that Ace performed work or incurred costs after May 31, 2013, the period of its final payment application. See, e.g. [D.E. 36-1] 55–135 (MFCC 7251–7330) (showing alleged delay costs through March 27, 2013, of $100,323.84, with attached documentation). Thus, Ace received, or accepted, payments for all the relevant time periods of the project. Accordingly, pursuant to the plain contractual language in paragraph 5.12, Ace has released MFCC "from all claims or liability . . . for anything which occurred or which failed to occur" during the project. [D.E. 33-1] 12. Delay damages fit within the broad scope of this release, which exempts only claims for retainage (a claim on which MFCC does not seek summary judgment). See id. Thus, under the plain language of paragraph 5.12, MFCC is entitled to summary judgment with respect to Ace's breach-of-contract counterclaim for delay damages.

B.

Ace's second counterclaim alleges that MFCC violated the North Carolina Prompt Pay Act ("NCPPA"), codified at N.C. Gen. Stat. §§ 22C-1 et seq., when it failed to remit payments to Ace within seven days of MFCC's receipt of payment from the government. Ace Am. Countercl. [D.E.

10

16] ¶¶ 24–27. As discussed, Ace waived its claims related to delay damages, including interest under the NCPPA. Thus, the court grants MFCC's motion for partial summary judgment with respect to any claim under the NCPPA for interest related to delay damages.

C.

Ace's third counterclaim advances, as "an alternative to Count I (Breach of Contract)," a quantum meruit claim for the "reasonable value of services it rendered to MFCC." Ace Am. Countercl. [D.E. 16] ¶¶ 28–34. Under North Carolina law, "[q]uantum meruit operates as an equitable remedy based upon a quasi contract or a contract implied in law which provides a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." Ron Medlin Constr. v. Harris, 364 N.C. 577, 580, 704 S.E.2d 486, 489 (2010) (quotation omitted); see Potter v. Homestead Pres. Ass'n, 330 N.C. 569, 578, 412 S.E.2d 1, 7 (1992). "Quantum meruit is not an appropriate remedy when there is an actual agreement between the parties" on the same subject matter. Ron Medlin Constr., 364 N.C. at 580, 704 S.E.2d at 489 (quotation omitted); see Potter, 330 N.C. at 578, 412 S.E.2d at 7 ("Quantum meruit is not an appropriate remedy when the plaintiff has alleged an express, oral contract."); Catoe v. Helms Constr. & Concrete Co., 91 N.C. App. 492, 497, 372 S.E.2d 331, 335 (1988) ("It is equally well-settled in North Carolina that there can be no recovery for breach of implied contract when an express contract covers the same subject matter.").

The subcontract between MFCC and Ace is valid and covers the same subject in Ace's quantum meruit claim. See, e.g., Ace Am. Countercl. [D.E. 16] ¶¶ 7–8, 19–20, 29–31. Ace cannot pursue a quantum meruit claim simply because it waived its rights to pursue a breach-of-contract claim under the express terms of that contract. See Potter, 330 N.C. at 579, 412 S.E.2d at 7 (noting that a plaintiff could pursue an alternative quantum meruit claim only if "she fail[ed] to prove the

11

existence of an express contract"); Catoe, 91 N.C. App. at 498, 372 S.E.2d at 335 (noting that "it is error to submit an alternative implied contract [or quantum meruit] claim to the jury when an express contract has been proved). Thus, Ace's quantum meruit claim fails.

In opposition to this conclusion, Ace argues that MFCC's motion for summary judgment should be denied because "Ace has not been given an opportunity to conduct discovery on this issue." [D.E. 36] 30 (citing Fed. R. Civ. P. 56(d)). Under Rule 56(d), a court may "defer considering the motion [for summary judgment] or deny it" if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The decision to deny a motion for summary judgment under Rule 56(d) is committed to the sound discretion of the district court. See, e.g., Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998); Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006); Evans v. Techs. Application & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996).

Ace's argument fails for two reasons. First, Ace has not filed an affidavit or declaration showing specific reasons why it cannot present facts to justify its opposition to MFCC's motion for summary judgment on the quantum meruit claim. Rather, Ace's counsel argues that a delay for further discovery is necessary, but fails to cite specific facts to be discovered. This argument does not comply with Rule 56(d). See, e.g., Dave & Buster's, Inc. v. White Flint Mall, LLP, No. 14-1794, 2015 WL 3622239, at *8 (4th Cir. June 11, 2015) (unpublished); McCray v. Md. Dep't of Transp., 741 F.3d 480, 484 (4th Cir. 2014); Evans, 80 F.3d at 961.

Second, and alternatively, the court declines to permit Ace further discovery on a quantum merit claim because the record conclusively shows that, under North Carolina law, Ace lacks a colorable quantum merit claim. Accordingly, the court grants summary judgment to MFCC on Ace's quantum merit claim.

12

D.

Ace's fourth counterclaim alleges that MFCC and FDCM violated the Miller Act. See Ace Am. Countercl. [D.E. 16] ¶¶ 35–44. The Miller Act permits a party who has "furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under [40 U.S.C. §] 3131" to bring a civil action if the party is not paid within 90 days of having finished the contracted work. 40 U.S.C. § 3133(b)(1). The Miller Act provides an unpaid subcontractor with a remedy to receive payment because it has "no lien and no claim against the Government." United States f/u/o B's Co. v. Cleveland Elec. Co. of S.C., 373 F.2d 585, 588 (4th Cir. 1967). A successful Miller Act plaintiff must prove that (1) labor or materials were supplied for work in the contract; (2) the supplier of that labor or materials is unpaid; (3) the supplier had a good faith belief that the labor or materials were for the specified work; and (4) jurisdictional requisites are met. See, e.g., United States f/u/b/o Krupp Steel Prods., Inc. v. Aetna Ins. Co., 831 F.2d 978, 980 (11th Cir. 1987); United States f/u/b/o Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759, 761 (9th Cir. 1984); United States f/u/b/o Carlson v. Cont'l Cas. Co., 414 F.2d 431, 433 (5th Cir. 1969).

In determining whether a subcontractor is unpaid, as the Miller Act requires, the court looks to the terms of the subcontract. See, e.g., United States f/u/b/o Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1207 (9th Cir. 2002) (interpreting a prior version of 40 U.S.C. § 3133); United States f/u/b/o Woodington Elec. Co. v. United Pac. Ins. Co., 545 F.2d 1381, 1383 (4th Cir. 1976) (same); United States v. Travelers Cas. & Sur. Co. of Am., 55 F. Supp. 3d 852, 860 (N.D. W. Va. 2014); HPS Mech., Inc. v. JMR Constr. Corp., No. 11-cv-2600-JCS, 2014 WL 3845176, at *13–14 (N.D. Cal. Aug. 1, 2014) (unpublished); Morganti Nat'l, Inc. v. Petri Mech. Co., No. 9:98-CV-309-SRU, 2004 WL 1091743, at *11 (D. Conn. May 13, 2004) (unpublished). Although the terms of the subcontract cannot dictate the timing of recovery contrary to the Miller Act, the subcontract dictates

13

the "measure of recovery." See Walton Tech., Inc., 290 F.3d at 1207; Taylor Constr. Inc. v. ABT Serv. Corp., 163 F.3d 1119, 1122 (9th Cir. 1998); Travelers, 55 F. Supp. 3d at 860; Morganti, 2004 WL 1091743, at *11.

A waiver of the right to bring suit under the Miller Act is invalid unless the waiver is "(1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c). Moreover, a waiver under the Miller Act must be "clear and explicit." United States f/u/b/o Clark-Fontana Paint Co. v. Glassman Constr. Co., 397 F.2d 8, 10 (4th Cir. 1968).

In support of their motion for partial summary judgment, MFCC and FDCM contend that Ace "cannot recover delay damages pursuant to a Miller Act claim." [D.E. 34] 19. In support, they cite a single federal district court opinion that held that "[d]amages based on . . . delays are not within the legislative intent of [the Miller Act]." United States f/u/o E & R Constr. Co. v. Guy H. James Constr. Co., 390 F. Supp. 1193, 1244 (M.D. Tenn. 1972).[3] Although the Fourth Circuit has not addressed this question, more persuasive case law suggests that delay damages are cognizable under the Miller Act. See, e.g., Lighting & Power Servs., Inc. v. Roberts, 354 F.3d 817, 823 (8th Cir. 2004) ("[W]e have already held that under the Miller Act a subcontractor can recover additional expenses incurred because of delay regardless of the fault of the general contractor or government delay); United States f/u/b/o T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 46, 951 (5th Cir. 1991) (finding that a Miller Act plaintiff "can recover increased out-of-pocket costs for labor and materials furnished in the course of performing its subcontract caused by contractor . . . delay"); United States f/u/b/o Pertun Constr. Co. v. Harvesters Grp., Inc., 918 F.2d

---

[3] MFCC and FDCM also cite Lite-Air Prods., Inc. v. Fid. & Deposit Co. of Md., 437 F. Supp. 801, 803–04 (E.D. Pa. 1977). The court has reviewed the case. It does not support their argument.

14

915, 918 (11th Cir. 1990) ("Surety liability for out-of-pocket costs of delay is consistent with both the language and the purpose of the Miller Act."); United States f/u/b/o Heller Elec. Co. v. William F. Klingensmith, Inc., 670 F.2d 1227, 1231 (D.C. Cir. 1982) (concluding that, "under the Miller Act," a surety could be held liable for delay costs); cf. United States ex rel. Mavis Mech. Servs., Inc. v. Hanover Ins. Co., 182 F.3d 910, 1999 WL 454618, at *2 n.1 (4th Cir. 1999) (per curiam) (unpublished table decision) (finding that the court "need not reach" the plaintiff's claim that the Miller Act permits recovery for delay damages). Thus, the court rejects MFCC's and FDCM's motion for summary judgment on Ace's Miller Act claim.

Alternatively, MFCC and FDCM contend that the partial waivers of claims that Ace submitted with its payments applications bar Ace's claim under the Miller Act. [D.E. 34] 18–20. Although the partial waivers explicitly waived Ace's right to bring a Miller Act claim, there is (as already explained) a genuine issue of material fact whether the partial waivers are valid. Thus, these partial waivers cannot serve as a basis for partial summary judgment on this claim.

As for paragraph 5.12 of the subcontract, Ace agreed that "the acceptance of any payment shall constitute a release of the Contractor from all claims or liability . . . for anything which occurred or which failed to occur during the payment period to which the payment relates." [D.E. 33-1] 12 (emphasis added). The paragraph then goes on to state: "Acceptance of final payment by the Subcontractor shall constitute a general release of the Contractor, its surety and the Owner." Id. (emphasis added). Because a Miller Act waiver must be "clear and explicit," the court declines to award summary judgment based on the waiver in paragraph 5.12. See, e.g., Clark-Fontana Paint Co., 397 F.2d at 10–11; 40 U.S.C. § 3133(c). Thus, the court denies MFCC's and FDCM's motion for summary judgment on Ace's Miller Act claim.

15

E.

Finally, the parties seek summary judgment on MFCC's claim for declaratory judgment. See [D.E. 32] 1–2; [D.E. 33] 1. In that claim, MFCC seeks judgment "declaring that the Subcontract, the Payment Applications, the Waivers and Change Orders are valid and enforceable against Ace, and operate as a bar to the payment demands by Ace, and declaring that not [sic] additional funds are due to Ace under the Subcontract or otherwise." MFCC Compl. [D.E. 1-1] 12. Genuine issues of material fact remain concerning the validity of the partial waivers of claims and the parties' obligations under the Miller Act and the retainage claims. Thus, the court denies both motions for partial summary judgment with respect to MFCC's claim for declaratory judgment.

III.

In sum, the court GRANTS IN PART and DENIES IN PART MFCC's and FDCM's motion for partial summary judgment [D.E. 33]. The court grants the motion with respect to Ace's first and second counterclaims, as they relate to delay damages, and Ace's third counterclaim for quantum meruit. The court denies the motion with respect to Ace's fourth counterclaim and MFCC's claim for declaratory judgment. The court DENIES Ace's motion for partial summary judgment [D.E. 32].

The court refers this case to United States Magistrate Judge Gates for a court-hosted settlement conference. Judge Gates will notify the parties how he wishes to proceed concerning the settlement conference, and the date on which it will be held.

SO ORDERED. This _26_ day of June 2015.

JAMES C. DEVER III
Chief United States District Judge